UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| AAVN, INC., | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 17-CV-8329 |
| | ) | |
| v. | ) | Judge Sharon Johnson Coleman |
| | ) | |
| WESTPOINT HOME, INC., | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORDANDUM OPINION AND ORDER**

Plaintiff AAVN, Inc. filed a Verified Complaint in November 2017, alleging that defendant WestPoint Home, Inc.[1] violated Section 43(a) of the Lanham Act, the Illinois Consumer Fraud and Deceptive Business Practices Act ("ICFA"), and the Illinois Uniform Deceptive Trade Practices Act ("IUDTPA"). WestPoint moves to dismiss AAVN's Verified Complaint in its entirety for lack of standing and failure to state a claim under Federal Rules of Civil Procedure 8(a), 12(b)(1), 12(b)(6), and 9(b). In the alternative, WestPoint moves to strike AAVN's requests for punitive damages, declaratory relief, and damages under the IUDTPA, pursuant to Federal Rule of Civil Procedure 12(f). For the reasons outlined below, the motion to dismiss [14] is granted, and the motion to strike [15] is denied as moot.

**Background**

AAVN alleges that it develops, designs, and sells a wide variety of woven textile fabrics, including fabrics made from a cotton-polyester blend. AAVN's president, Arun Agarwal, owns patents that teach a method of manufacturing a cotton-polyester blended textile to successfully

---

[1] Defendant states that AAVN erroneously sued WestPoint Home, Inc. when the proper entity is WestPoint Home LLC.

1

achieve high thread counts. WestPoint markets and/or sells bed sheets branded as Martex 1200, which it advertises as 1,200 thread count sheets.

In January 2017, AAVN purchased a set of Martex 1200 sheets, which it then sent to Vartest Laboratories to test for the thread count present in the sheets. AAVN alleges that Vartest determined that the sheets contained a thread count of 257, rather than the stated 1,200. AAVN's counsel sent a letter to WestPoint's president on March 9, 2017, informing WestPoint that it was misrepresenting the thread count of its Martex 1200 sheets and requesting that WestPoint immediately cease importing, marketing, or selling any textiles with packaging that misrepresents the thread count. AAVN alleges that WestPoint did not comply with AAVN's demands. AAVN purchased another set of WestPoint's Martex 1200 sheets on November 9, 2017, and Vartest determined that this set of sheets contained a thread count of 236.

AAVN then brought this suit on November 17, 2017. WestPoint now moves to dismiss the Verified Complaint, or in the alternative strike certain aspects of the IUDTPA claim request for damages and relief.

**Legal Standard**

A Rule 12(b)(1) motion seeks dismissal of an action over which a court allegedly lacks subject-matter jurisdiction. Fed. R. Civ. P. 12(b)(1). Standing is a threshold requirement in every federal claim and must be present at the time the lawsuit is filed. *See Groshek v. Time Warner Cable, Inc.*, 865 F.3d 884, 886 (7th Cir. 2017), cert. denied, 138 S.Ct. 740, 199 L. Ed. 2d 617 (2018).

When considering a Rule 12(b)(6) motion, the court accepts all of the plaintiff's allegations as true and views them "in the light most favorable to the plaintiff." *Lavalais v. Vill. of Melrose Park*, 734 F.3d 629, 632 (7th Cir. 2013). A complaint must contain allegations that "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). The plaintiff does not need to plead particularized facts, but the allegations in the complaint

must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Threadbare recitals of the elements of a cause of action and allegations that are merely legal conclusions are not sufficient for surviving a motion to dismiss. *Iqbal*, 556 U.S. at 678.

Additionally, because AAVN brings claims under Section 43(a) of the Lanham Act, the ICFA, and the IUDTPA, AAVN is also subject to the heightened pleading standard of Rule 9(b). *See Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr. v. Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011); *Gensler v. Strabala*, 764 F.3d 735, 737 (7th Cir. 2014); *Cardionet, Inc. v. Lifewatch Corp.*, No. 07 C 6625, 2008 WL 567031, at *2 (N.D. Ill. Feb. 27, 2008) (Conlon, J.). Under Rule 9(b), a plaintiff alleging fraud "must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint must allege "the who, what, when, where, and how of the fraud." *Pirelli Armstrong*, 631 F.3d at 441–42 (internal quotations and citation omitted).

**Discussion**

WestPoint first argues that AAVN's claims should be dismissed for lack of standing. In support, WestPoint requests that this Court take judicial notice of AAVN's and Vartest's websites and materials published by ASTM International and the U.S. government. (Dkt. 14-2.) Because judicial notice is unnecessary to resolve WestPoint's motion, the request is moot.

To establish the threshold requirement of Article III standing, AAVN must plausibly allege facts demonstrating that: (1) it suffered an injury in fact, (2) are fairly traceable to the challenged conduct of WestPoint, and (3) are likely to be redressed by a favorable judicial decision. *Spokeo, Inc. v. Robins*, 136 S.Ct. 1540, 1547, 194 L. Ed. 2d 635 (2016), as revised (May 24, 2016). Contrary to WestPoint's briefing, although proximate causation is a requirement for a claim under the Lanham Act, it is not a requirement for Article III standing. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 134 n.6, 134 S.Ct. 1377, 188 L.Ed.2d 392 (2014); *see also Toddy Gear, Inc. v. Navarre*

3

*Corp.*, No. 13 CV 8703, 2014 WL 4271631, at *2 n.1 (N.D. Ill. Aug. 26, 2014) (Norgle, J.). Article III standing "requires only that the plaintiff's injury be fairly traceable to the defendant's conduct." *Lexmark*, 572 U.S. at 134 n.6. WestPoint does not address Article III standing beyond stating the elements required to establish a threshold requirement.

Instead, WestPoint focuses on statutory standing. WestPoint contends that AAVN has no standing to invoke a cause of action pursuant to the Lanham Act because AAVN fails to allege facts demonstrating that it suffered any injury in fact proximately caused by WestPoint. AAVN alleges it has standing because it sells woven textile fabrics, and WestPoint's alleged misstatements regarding the thread count of its Martex 1200 sheets "will likely influence the purchasing decisions of [WestPoint's] customers." (Dkt. 20 at 5.) In light of the parties' arguments, this Court focuses on statutory standing required to proceed on a claim pursuant to the Lanham Act.

For a plaintiff to have alleged a claim under section 43(a) of the Lanham Act, plaintiff must properly plead and prove "an injury to a commercial interest in sales or business reputation proximately caused by the defendant's misrepresentation." *Lexmark*, 572 U.S. at 140. To show proximate cause, AAVN must show "economic or reputational injury flowing directly from the deception wrought by [WestPoint's] advertising; and … that occurs when deception of consumers causes them to withhold trade from [AAVN]." *Id.* at 133.

In its response, AAVN fails to address how its allegations demonstrate any economic or reputational harm. AAVN does not allege that it markets or sells high thread count sheets, which it contends that WestPoint does. (Dkt. 1 ¶¶ 9–11.) Rather, AAVN generally contends that it "develops, designs, and sells a wide variety of woven textile fabrics, including fabrics from a cotton-polyster blend." (*Id.* ¶ 6.) From there, AAVN concludes that harm done to WestPoint's customers and potential customers through the false and misleading advertising statements also injure AAVN's business, reputation, and goodwill. (*Id.* ¶¶ 23, 34, 43.) AAVN makes no attempt in its Verified

4

Complaint to connect how the alleged false advertising on WestPoint's sheet packaging harms AAVN. Indeed, it is not clear from the Verified Complaint that AAVN and WestPoint are even competitors.

AAVN likewise does not allege specific reputational harm proximately caused by WestPoint's alleged misrepresentations. AAVN alleges that WestPoint's product may deceive its own customers without asserting how any harm to those customers will impact AAVN's reputation. Stating that there will be harm does not make it so. The "proximate-cause requirement generally bars suits for alleged harm that is 'too remote' from the defendant's unlawful conduct." *Lexmark*, 572 U.S. at 133. Moreover, although AAVN claims that it will experience immediate and irreparable injury from WestPoint's continued sales of the Martex 1200, AAVN's actions prior to filing suit indicate otherwise. AAVN waited from March 2017, when it alleges that it became aware of WestPoint's false advertising, until November 2017, to file the present litigation. The time that lapsed cuts against any claims that damages to AAVN would be immediate. Further, AAVN was unable to provide even an estimate of the alleged immediate damages that it experienced during that time. Without specifics regarding AAVN's business, the competing product AAVN sells, or how WestPoint's alleged false advertising impacted AAVN's ability to sell its product, AAVN fails to demonstrate statutory standing.

AAVN attempts to provide additional detail by attaching a declaration to its brief in opposition from Agarwal, AAVN's president. (Dkt. 20-1.) Although this Court may consider a declaration submitted in support of a Rule 12(b)(1) challenge to standing, *Evers v. Astrue*, 536 F.3d 651, 656–57 (7th Cir. 2008), this Court does not find AAVN's declaration sufficient to change the outcome of this motion. Agarwal merely reiterates the Verified Complaint allegations that AAVN is in the business of selling woven textile fabrics, which is far from precise enough to assert a competitor relationship. (Dkt. 20-1 ¶ 2.); *see also Lexmark*, 572 U.S. at 139–40. Then Agarwal states

that AAVN's subsidiary sells high thread count woven textiles that compete with WestPoint's Martex 1200. (Dkt. 20-1 ¶ 3.) AAVN cannot sue for false advertising on behalf of its subsidiary. Wrongdoing to a subsidiary does not confer standing on a parent corporation. *See Tullett Prebon, PLC v. BGC Partners, Inc.*, No. CIV 09-5365 (SRC), 2010 WL 2545178, at *4 (D.N.J. June 18, 2010), aff'd, 427 F. App'x 236 (3d Cir. 2011); *see also Kinetic Concepts, Inc. v. Wake Forest University Health Sciences*, 2013 WL 2453267, at *2–3 (W.D. Tex. 2013) (university lacked standing to assert claims of its subsidiary).

Even if AAVN could sue on behalf of its subsidiary, AAVN still fails to assert a link between any confusion resulting from WestPoint's alleged false advertising and its own sales or reputation. *See Phoenix Entm't Partners, LLC v. Rumsey*, 829 F.3d 817, 823 (7th Cir. 2016) (affirming dismissal of plaintiff's complaint because the "pathway between the defendants' alleged trademark infringement and [plaintiff's] claimed injuries is indirect."); *Alan Ross Mach. Corp. v. Machinio Corp.*, No. 17-CV-3569, 2018 WL 6018603, at *3 (N.D. Ill. Nov. 16, 2018) (Durkin, J.). Moreover, AAVN fails to assert any specifics regarding the process by which Vartest determined that WestPoint's sheets had a lower thread count than advertised.

AAVN points to one authority from a sister court in this district, *Morton Grove Pharmaceuticals, Inc. v. National Pediculosis Association, Inc.*, 494 F. Supp. 2d 934 (N.D. Ill. 2007) (Bucklo, J.). In *Morton Grove*, plaintiff alleged that defendant had launched an attack campaign against it that resulted in decreased sales for plaintiff's product that was a direct alternative to defendant's product. Plaintiff alleged that as a result its sales of that product decreased 23%, which amounted to more than $9.3 million in lost sales. *Id.* at 938. In stark contrast, AAVN makes no attempt to quantify any alleged damages, contending only that WestPoint's statement about the thread count of its sheets deceive WestPoint's customers, which "is likely to influence the purchasing decisions of WestPoint's customers." (Dkt. 1 at ¶ 20.) There are no allegations regarding AAVN's own sales. Although

6

under some circumstances a plaintiff may present a viable complaint without alleging specific damages, AAVN's failure to allege how influence of WestPoint's customers actually impacts AAVN's business proves fatal.

As AAVN concedes (Dkt. 20 at 5 n.1), its claims for false advertising under the IUDTPA and ICFA rise or fall with its claim under the Lanham Act, which is based on the same alleged misrepresentation. *See Platinumtel Commc'ns, LLC v. Zefcom, LLC*, No. 08-CV-1062, 2008 WL 5423606, at *8 (N.D. Ill. Dec. 30, 2008) (Lefkow, J.) (citing *Gimix, Inc. v. JS & A Group, Inc.*, 699 F.2d 901, 908 (7th Cir. 1983)). As such, because AAVN does not have standing to pursue its claims under the Lanham Act, it also does not have standing to continue on its claims arising under the IUDTPA and ICFA.

**Conclusion**

Based on the foregoing, this Court grants WestPoint's Motion to Dismiss [14], and denies WestPoint's Motion to Strike [15] as moot. This case is dismissed.

IT IS SO ORDERED.

Date: 3/13/2019

Entered: _____
SHARON JOHNSON COLEMAN
United States District Court Judge